UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


STACY L. TAYLOR

V.                                                    CA 03-601LO

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration

MEMORANDUM AND ORDER


This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying disability insurance benefits ("SSDI") and Supplemental Security Income benefits ("SSI") under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed her complaint on December 22, 2003 seeking to reverse the decision of the Commissioner and to have benefits awarded to her. Plaintiff has filed a motion for summary judgment seeking a reversal of the Commissioner's decision and an award of benefits. The Commissioner has filed a motion to affirm her decision. This matter has been referred to a magistrate judge for determination based upon the consent of the parties and referral from the district court. 28 U.S.C. § 636(c). Based upon my review of the entire record and the legal memoranda filed by the parties, as well as my independent legal research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that the plaintiff is not disabled within the meaning of the Act. Consequently, the Commissioner's motion to affirm is granted and the plaintiff's motion for summary judgment is denied.


## Background

The plaintiff filed applications for SSDI and SSI benefits on July 30, 2001 alleging an inability to work since November 23, 2000. These applications were denied initially and on reconsideration by the Social Security Administration ("SSA"). On March 20, 2003, an Administrative Law Judge ("ALJ") held hearings at which plaintiff, appearing with her counsel, testified. A medical expert, Dr. Michael Friedman, and a

1

Vocational Expert, Carl Barchi, also testified. On April 25, 2003, the ALJ rendered his decision denying benefits as plaintiff was not under a disability within the meaning of the Act.

This decision was reviewed and affirmed by the Appeals Council on October 20, 2003 and became the final decision of the Commissioner. A timely appeal was then filed with this Court.

## Standard of Review

Judicial review of the Commissioner's decision is limited in scope - the decision "will be overturned only if it is not supported by substantial evidence, or if it is based on legal error." Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995); see also Richardson v. Perales, 402 U.S. 389, 401 (1971); Evangelista v. Secretary of Health and Human Services, 826 F.2d 136, 144 (1st Cir. 1987). If substantial evidence can be found in the record which indicates that the claimant is not disabled within the meaning of the Act, then this Court must uphold the decision of the Commissioner. Although less than a preponderance, substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Mendoza v. Secretary of Health and Human Services, 655 F.2d 10, 13 (1st Cir. 1981).

The plaintiff may be considered disabled within the meaning of the Act only if she is unable to perform any substantial gainful work because of a medical condition which can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §§ 416(i)(1) and 423(d)(1); 20 C.F.R. §§ 404.1505 and 416.905. Her impairment must be so severe as to prevent her from working not only in her usual occupation, but in any other substantial gainful work considering her age, education, training and work experience. 42 U.S.C. § 423(d)(2)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987). Evidence of a physical impairment is not enough to warrant an award of disability insurance benefits; plaintiff must also be precluded from engaging in any substantial gainful activity by reason of such impairment. McDonald v. Secretary of Health and Human Services, 795 F.2d 1118, 1120 (1st Cir. 1986).

If a plaintiff is partially but not totally disabled by impairments, she is not disabled within the meaning of the Act. Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965). A plaintiff's complaints cannot provide the basis of entitlement

2

when they are not supported by medical evidence. Avery v. Secretary of Health and Human Services, 797 F.2d 19, 20-21 (1st Cir. 1986).

The Court's review is directed to the record as a whole and not merely to the evidence tending to support a finding. Frustaglia v. Secretary of Health and Human Services, 829 F.2d 192, 195 (1st Cir. 1987). The Court must also determine whether the Commissioner has applied correct legal standards in deciding the claim. Lizotte v. Secretary of Health and Human Services, 654 F.2d 127 (1st Cir. 1980).

### Discussion

### Factual Evidence

Under questioning by the ALJ, Dr. Michael Friedman, a board-certified psychiatrist, testified that he had reviewed the medical records in this matter. He noted that in July 2001, a psychiatric evaluation at the Providence Center diagnosed post-traumatic stress disorder, alcohol and cannabis dependence, and mixed personality disorder. The GAF was 50. In August, the Center noted post-traumatic stress disorder, major depression, and alcohol dependence. Reviews by non-treating persons showed mild to moderate limitations. A Butler Hospital discharge report in June 1999 had a diagnosis of substance abuse and post-traumatic stress disorder. Other Butler Hospital notes in April 1999 showed panic disorder. In August, the hospital notes mentioned poly substance abuse. In November 1998, notes from Elm Crest Behavioral & Health had a diagnosis of poly substance abuse (use of alcohol, cocaine, and marijuana). In October 1998, the diagnosis was major depression and poly substance dependence. The GAF was 65. In September 2002, the Rhode Island Hospital ("RIH") discharge summary showed stress with suicidal ideation, major depression, escalating use of substances, poly substance abuse, and mood disorder. The use of poly substances seemed to increase with stress. When discharged from RIH, she was taking Prozac and Trazodone.

The ALJ pointed out that the period in question was November 23, 2000 to the hearing date. During that time, Dr. Friedman stated that the record did not demonstrate that the plaintiff was under an impairment or combination of impairments which meets or equals any of the listings. Tr. at 259. Dr. Friedman was then given a copy of form HA528 and requested by the ALJ to state the functional limitations based upon the whole record with the

3

substance abuse and without it.[1]  It is difficult for this Court to interpret Dr. Friedman's comments as to form HA528, but it appears that he found that, with the presence of substance abuse, the plaintiff had a moderate limitation in the ability to understand, carry out, and remember instructions, the ability to respond appropriately to supervisors and co-workers, the ability to respond to customary work pressures, the ability to perform complex tasks and perform various tasks.  There was only a mild limitation on the performance of simple tasks.  Without the presence of substance abuse, the above limitations were mild except there were no limitations on performing simple tasks.  Tr. at 259.  The medications being taken by the plaintiff (Prozac and Trazodone) can cause fatigue, dry mouth, nausea and increased appetite.

Under questioning by the plaintiff's counsel, Dr. Friedman again testified that the record of this matter does not "reflect an impairment, which in my opinion, meets a moderately severe or severe impairment."  Tr. at 260.  While there is evidence of a depressive disorder, one cannot state that it is major depression.  There is also a documented mood disorder and a post-traumatic stress disorder.  There is also a substance abuse problem.  Based upon the record, however, the plaintiff has these issues, but Dr. Friedman had not personally verified those problems.  The record does not show a consistent pattern of moderately severe or severe impairments.  Even the GAF varies from 50 to 65 and the GAF of 50 occurs when she is receiving treatment or just released from in-patient treatment.  Dr. Friedman also stated that a person could have a substance abuse problem which does not cause another diagnosis such as depression and/or post-traumatic stress disorder.  However, substance abuse issues do make the symptoms worse.  Dr. Friedman stated "I think substance abuse as a rule of thumb tends to make psychiatric symptomatology worse."  Tr. at 268.

The plaintiff then testified that she was 32 years old, single, and lived with a significant other.  She lives in an apartment and has a high school education.  She has held various jobs for short periods of time including waitress, an admissions representative at a modeling agency, a legal secretary, an administrative secretary, sales person in a consignment store, and a data entry job.  Many of these jobs were for a temporary

---

[1] A review of the entire record by this Court fails to reveal a copy of form HA528.  Neither party has included a copy with their supporting memorandum or directed the Court to a copy in the record.

4

agency. The data entry position lasted 1-2 years which was the longest time period at the same job. Her jobs were of short duration, as she left home when she was young and she moved around a lot. Also, she stated that she had "social anxiety" and she could not meet people, she had trouble getting up in the morning and going to work, and she started to "freak out". Tr. at 274. Currently, she is not working and has no income. She was on state assistance, but was recently removed. She has two children living in Connecticut and recently had another child which was then in the care of Rhode Island DCYF. This is due to the fact that she used substances during her pregnancy and DCYF wants to see her and her boyfriend in programs before the child is released to her. She has two other children - a 10 year old daughter that lives with her father and a 4 year old son that lives with the plaintiff's mother and has behavioral problems.

She feels she cannot work due to her "anxieties" and panic attacks. Tr. at 275. These problems occur at "various odd strange times that are (sic) I can't control." Tr. at 275. She has a disassociative disorder which causes her to lose time and she cannot recollect conversations. This makes her nervous. She has fatigue and loss of concentration. She is being treated at the Providence Center and is also involved with Project Link[2] which is stopping and she will go with PACKS[3] for a more intensive program. She is being seen the Providence Center by a counselor, not by a psychiatrist. Tr. at 277.

She spends her time by going to group therapy and sleeping a lot. She has a schedule that she follows to regain custody of her newborn. She does no housework, cleaning, cooking as she prefers to sleep. Her boyfriend does this. She does not drive as her license was taken, but recently returned but she has not gone to get it back. She and her boyfriend shop together for groceries. Currently, she is "clean" (between 60-90 days), but drinks "occasionally" (usually beer once per week). Tr. at 278. She arises at 9 AM in order to go to her group meeting at 10 AM (about 1 hour); she might attend a parenting class, a relapse prevention class, a life skills class, and AA meetings. She takes the bus with her boyfriend or obtains group transportation. She currently takes Prozac and Trazodone and expects to be taking

---

[2] Project Link is a program for women with children that suffered from substance abuse and post-traumatic stress disorder.

[3] PACKS is a treatment program for women who have dual diagnoses, mental health and substance abuse issues. It is 6 hours daily.

Zyprexa again shortly. Fatigue is a side effect of the medications.

Upon questioning by her own counsel, the plaintiff stated that when she is depressed she is sad, unmotivated and is crying all the time. She cannot eat, sleep, and has "racing" thoughts constantly. Tr. at 280. She just curls up in her room and stays there. Whether she is depressed depends on what her life is like. Depression could last a whole week and every day she is miserable. At times, she can go a whole month without depression. She is very irritable and gets stressed out/frustrated easily. Almost anything will cause her stress. She has a past history of sexual abuse and retains memories of that and she has dreams about it. These dreams happen 2/3 times weekly and she can have flashbacks in her group sessions. She lacks trust of people, especially males. She can get flashbacks at work.

She has trouble getting up and going to work and she has anxiety. Anxiety causes her to hyperventilate, shaking, inability to speak, and crying. This occurs 3/4 times monthly. She has no difficulty starting a new job, but as time goes on, she has difficulty functioning with increased job loads and deadlines. She has not been involved in substance abuse for 60-90 days at the time of the hearing, but had been abusing drugs 2/3 times weekly. She had been using "cocaine, sometimes marijuana, whatever would work." Tr. at 285. In the past, she had been clean for 5/6 months, but used drugs again when she became pregnant. She does not believe her drugs and alcohol make her other symptoms worse as she does not abuse drugs when working or depressed. Even when she is clean, she has symptoms that are just as intense. She has an impulsive behavior disorder when she will be active sexually, gambling or shoplifting. She does not know what triggers this behavior. Other than her boyfriend, she is not active socially due to anxiety. She does read and watch television for awhile, but then loses concentration and has to go onto another activity.

The ALJ then questioned the plaintiff about her having problems being around males and not being socially active. The plaintiff admitted she was an "escort" about 4 years ago and became pregnant by a customer. The plaintiff replied stating she only uses males for compensation and does not like what she does. She extracts revenge by taking their money. She would work as an "escort" 1-2 times monthly to get money.

The plaintiff's counsel then re-examined Dr. Friedman who stated that the plaintiff's impulsive behavior was a disorder and

6

that the use of drugs and alcohol could be a part of that. Losing track of time and not remembering can be symptoms of a disassociative disorder which can be part of post-traumatic stress or sexual abuse. Stress associated with work could make her symptoms worse. The ALJ then questioned Dr. Friedman who stated that the plaintiff's testimony was generally consistent with the medical records. Even so, the plaintiff's symptoms do not meet or equal a listing and the residual functional capacity assessment remains poor. The plaintiff's testimony did not change any of Dr. Friedman's opinions.

The vocational expert ("VE"), Carl Barchi, testified that he had heard all of the testimony and had reviewed all of the documents in this matter. He stated that the waitress and retail sales positions were light, semi-skilled; the legal secretary, administrative secretary, and administrative admission representative positions were sedentary, skilled; and the data entry and receptionist positions were sedentary, semi-skilled.

The ALJ asked a hypothetical question assuming a person with the same age and education as the plaintiff; to ignore the plaintiff's past work history; that the person has a residual functional capacity for work at all exertional levels limited by non-exertional moderate impairments in maintaining concentration and attention, ability to perform more complex tasks for shorter durations of time, ability to interact with the public on an occasional basis without personal contact, can deal appropriately with supervisors and co-workers in occasional interaction but not as part of a team or requiring a handoff of product or working closely together, can deal with supervisors on an occasional basis but not frequently in a close environment, could attend work regularly with an occasional absence or late arrival or early departure, could work at an assigned workstation during a normal day, and work at a consistent pace with minor variations and limited flexibility for additional hours, changes in work schedule or increased productivity. The VE stated that such a person could perform at least four types of positions - cashier, receptionist, stock clerk, or cleaning, all of which exist at various exertional levels and are unskilled or semi-skilled. These jobs exist in substantial numbers in the Rhode Island area.

The plaintiff's counsel then inquired of the VE about a DHS form. The DHS form stated there were marked limitations in maintaining concentration and attention, interact appropriately with supervisors and co-workers, and and work at a consistent pace without extraordinary supervision. If, in fact, these marked limitations existed, then that person could not perform the jobs discussed.

7

Medical Evidence

In October 1998, the plaintiff, then 27 years old, was first admitted to Elmcrest Behavioral Health Network on a voluntary basis and had no previous history of psychiatric problems. She had been seeing a physician and was on medications. She was not doing well and had recently given birth and felt overwhelmed by the responsibilities. She had been sexually abused at an early age (she denied this was a stress factor) and was using cocaine since age 18. She had been clean for one year, but had recently relapsed. There was also a question of alcohol abuse. She believed she was depressed. She had her own business; she was in good medical condition; she was articulate and pleasant. The diagnoses were major depression, dysthymic disorder, alcohol dependence, and cocaine dependence. She was taking Zoloft, Ambien and Xanax. It was noted that she minimizes her drug/alcohol problem. Her stay lasted four days.

She was discharged from Elmcrest Adult PHP in late November 1998. During the past month, she had episodes of depression, argument with an ex-boyfriend, alcohol and cocaine binges, and she missed appointments. She did not participate in any drug/alcohol abuse treatment programs although this was recommended. The transfer diagnoses were alcohol and cocaine dependence, major depression and dysthymic disorder. Her then GAF was 30 and she was transferred to a higher level of care. In late November 1998, the plaintiff was transferred to Elmcrest in Connecticut for Acute Services for dependency on alcohol. She left after one day against the advice of the staff.

In March/April 1999, the plaintiff was at Butler Hospital for symptoms of anxiety, panic and depression. She had been working as a legal secretary. She was using marijuana and alcohol heavily. She was stressed due to legal problems with custody and visitation with her two children. She also had financial problems and was involved in prostitution. She was given medications including Paxil and Ativan. She was transferred to the women's program for continued treatment but stayed only one day.

In June 2001, the plaintiff was at the Roger Williams Medical Center for a laceration to her face from an assault. She was treated and released.

In October 2001, J. Stephen Clifford, Ph.D., completed a Psychiatric Review Technique. Therein, he stated that a Residual Functional Capacity review was necessary and that there was evidence of an anxiety related disorder and substance addiction

8

disorders. The anxiety related disorder was based on recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. There was also evidence of behavioral or physical changes associated with the regular use of substances that affect the central nervous system. Functional limitations included mild restriction of activities; moderate difficulty in maintaining social functioning; moderate difficulty in maintaining concentration, persistence and pace; and no limitation on episodes of decompensation of extended duration. As for mental residual functional capacity assessment, understanding and memory were not significantly limited; sustained concentration and persistence were not significantly limited except for moderate limitation in the ability to carry out detailed instructions, maintain attention and concentration for extended periods and in the ability to complete a normal workday and week without interruptions etc. Social interaction was not significantly limited except for the ability to accept instructions and criticism from supervisors. Adaptation was not significantly limited. A review by Dr. Mutter agreed with Clifford's findings.

In April 2001, the plaintiff was seen at the Providence Center for anxiety/depression. A psychiatric evaluation by Dr. Landis Mitchner demonstrated a history and current abuse of alcohol and drugs. She stated that she had no problem in occupational, social or recreational functioning. She did feel she was depressed. She was not currently taking any medications. She stated she realized that alcohol and drugs contribute to her depressed state. Tr. at 169. Diagnoses included post traumatic stress disorder, alcohol abuse, nicotine dependence, cocaine abuse, Ecstasy abuse and substance induced mood disorder. Her GAF was 50. She was given medications and educated on the association of her abuses to her depressive symptoms. Tr. at 171. Dr. Andrea Mernan noted that there were no physical activity limitations. There was a moderate limitation in remembering and carrying out simple instructions, making simple work-related decisions and responding appropriately to changes in work environment. There were marked limitations in maintaining concentration and attention, interacting appropriately with co-workers and supervisors, and working at a consistent pace without supervision. In February 2002, Dr. Mernan completed a medical questionnaire in which she stated that the plaintiff had no loss of ability to understand, remember and carry out simple instructions. She did have a loss of ability to make judgments commensurate with the functions of unskilled work, the ability to respond appropriately to supervisors and co-workers and the ability to deal with changes in a routine work setting. Tr. at 204-05.

9

In December 2001, Mary Ann Paxson, Ph.D., completed a Psychiatric Review Technique which stated that a residual functional capacity review was necessary and that there was evidence of affective disorder, anxiety related disorder, personality disorder and substance addiction disorder. The affective disorder included a depressive syndrome and a substance induced mood disorder. The anxiety related disorder was based upon recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. The personality disorder related to significant impairments in social or occupational functioning of subjective distress. There was clear evidence of substance abuse/addiction disorder. There were mild limitations in restriction of daily living, moderate limitations in maintaining social functioning, moderate limitation in maintaining concentration, persistence or pace, and no decompensation episodes of extended duration in the past year and two in 1998-99. In understanding and memory, there were no significant limitations. In sustained concentration and persistence, there were no significant limitations except for the ability to carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal work day/week without interruptions etc. There were no significant limitations in social interaction except a moderate limitation in the ability to interact appropriately with the general public. There were no significant limitations in adaptation.

In September 2002, a psychiatric evaluation was performed at Butler Hospital. It is not clear from the report, Tr. at 206, who performed the evaluation as the report is unsigned. The plaintiff arrived with a friend with a chief complaint that she wanted to kill herself. She was pregnant and had been told by her mother she could not see her 4 year old son. She then attempted suicide by using cocaine, alcohol and marijuana in binge fashion. She was living with a heroin addict and was unable to cope. The report does not indicate what action or treatment was taken, but subsequent documents would indicate she was taken to the Rhode Island Hospital ("RIH") ER.

In September 2002, she was taken to RIHER and admitted to the hospital. She was discharged 8 days later. She was placed in the psychiatric department and gave a history of depression and substance abuse. Her children (2) did not live with her. Three weeks earlier she binged on cocaine, alcohol and marijuana when denied access to one of her children. She stated she had decreased appetite, social withdrawal, anhedonia, frequent crying, feelings of hopelessness and helplessness, a strong urge to use substances to commit suicide and lack of personal hygiene.

She stated she was unable to work due to her pregnancy and, although she has a psychiatrist and counselor, she admitted she was noncompliant with treatment and medications. She apparently had been seen for her pregnancy by a resident at Women and Infant's Hospital. The initial diagnosis was major depression/substance abuse. She was placed on medications and had an OB/GYN consult. She also had individual and group therapy and was stabilized and discharged on medications. She was to have contact with Project Link and the Providence Center. Her discharge diagnosis was major depressive disorder/substance abuse/rule out post traumatic stress disorder.

In November 2002, the plaintiff was seen at the Providence Center where problems were identified and a treatment course set. Medications were continued. In December 2002, the Center noted she was a patient at Butler Hospital, but she appeared at the Providence Center a few days later. The assessment states that the plaintiff "appears to desire tx & recovery but appears to have difficulty being honest." Tr. at 230. She was to participate in group therapy. A few days later, the plaintiff was discharged from the Providence Center as she did not attend and appeared to have left the treatment program. Tr. at 232. The Providence Center reported the plaintiff's status to DCYF and that the plaintiff, who was then 7 months pregnant, admitted to daily use of alcohol, cocaine, and marijuana. Later in December 2002, the plaintiff was seen at the Providence Center indicating she left the residential facility which did not work for her due to her pregnancy. She wished to enter the Women's Day Program and admitted to drinking 2 days earlier.

Administrative Decision

In determining whether a claimant is disabled under the Social Security Act, the Commissioner employs a five step sequential analysis. 20 C.F.R. §§ 404.1520 and 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 6-7 (1st Cir. 1982). First, the adjudicator determines whether the claimant is performing substantial gainful employment. If she is, she is not disabled and the analysis is at an end. If she is not, step two requires a determination of whether a severe impairment exists. If it does not, the claimant is not disabled. If it does, step three requires a determination of whether the claimant's impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1. If a listed impairment is found, the claimant is disabled. If not, step four requires a determination of whether the claimant can perform her past relevant work. If

11

she can, the claimant is not disabled, and if she cannot, step five requires a determination of whether she can perform any other work in the national economy considering her age, education, and past work experience. If she can perform other work, she is not disabled and if she cannot, she is disabled.

In addition, the ALJ must give consideration to any allegations of pain in light of the criteria set forth in 20 CFR 404.1529 and consider the treating sources' opinions in light of 20 CFR 404.1527.

As to the first step, the ALJ found that the plaintiff has not engaged in substantial gainful employment since the alleged onset of disability.

As to steps two and three, the ALJ found that the plaintiff had severe impairments, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

The ALJ found that the claims presented by the plaintiff were not supported by the record and were not deemed to be credible to the extent alleged. The ALJ also found that the plaintiff maintained the residual functional capacity to perform a wide range of activity at all exertional levels with a moderate impairment in maintaining attention and concentration, deal appropriately with the public, co-workers and supervisors, and deal with ordinary requirements of attendance, perseverance and pace.

As to step four, the ALJ found that the plaintiff could not perform any of her past relevant work.

As to step five, the ALJ found that although the plaintiff could not perform a full range of work, she was capable of adjusting to certain work available in significant numbers in the national economy. Such work included cashier, receptionist, stock clerk, and cleaner.

As a result, the ALJ determined that the plaintiff was not disabled within the meaning of the Act.

The plaintiff argues one issue: (1) the Commissioner/ALJ failed to give appropriate weight to the opinion of the treating physician and failed to specify the weight he gave such opinion and the reasons therefor. I will address this issue.

**The Commissioner/ALJ failed to give appropriate weight to the**

12

**opinion of the treating physician and failed to specify the weight he gave such opinion and the reasons therefor.**

In essence, the plaintiff argues that the opinion of the treating psychiatrist[4], Dr. Mernan, was entitled to greater weight than given it by the ALJ. Also, in not giving Dr. Mernan's opinion greater weight, the ALJ did not explicate sufficiently the reasons for not doing so as required by case law and Social Security regulations.

First, the plaintiff correctly argues that if a treating physician's opinion is both well-supported and not inconsistent with other substantial evidence in the record, that opinion is to be given controlling weight. So the issue here is whether Dr. Mernan's opinion is both well-supported and not inconsistent.

Other than a questionnaire completed by Dr. Mernan, her opinions to the extent she expressed them are contained in the records of The Providence Center. In an initial psychiatric evaluation completed by Dr. Landis Mitchner, a psychiatrist at the Center, in July 2001, the plaintiff demonstrated a history and current abuse of alcohol and drugs. Tr. at 167-71. The plaintiff also denied problems in occupational, social, or recreational functioning. Tr. at 168. She stated that alcohol makes her feel more social and easier to interact with people. Tr. at 168. At the time of the evaluation, she was working as a prostitute. Tr. at 168. She had grossly intact cognition, good insight, and fair judgment. She realized that drugs and alcohol contribute to her depression. Tr. at 169.

In October 2001, Dr. Mernan's notes state that the plaintiff was drinking to excess and it was unclear as to the extent alcohol affected her difficulties, she was clear and goal

---

[4] This writer will assume that Dr. Mernan qualifies as a treating physician. However, a strong argument could be made that she does not so qualify. The record demonstrates that the plaintiff commenced treatment at The Providence Center in April 2001, underwent a psychiatric evaluation in July 2001, and did not see Dr. Mernan until October 2001. Dr. Mernan's notes indicate she saw the plaintiff on only two occasions, October 23 and November 21, 2001. The plaintiff apparently continued receiving medications from The Providence Center during 2002, but did not see Dr. Mernan. By December 2002, The Providence Center discharged the plaintiff from its programs as she was not attending.

13

oriented, she displayed normal intellect, and her judgment was intact. Dr. Mernan also indicated that the plaintiff had no physical activity limitations, and was only moderately limited in remembering and carrying out simple instructions, making simple work-related decisions and in responding appropriately to changes in work routine or environment. Tr. at 181. In February 2002, Dr. Mernan completed a medical questionnaire that stated the plaintiff had no substantial loss of ability to understand, remember, and carry out simple instructions. She did have a substantial loss of ability to make judgements commensurate with the functions of unskilled work, the ability to respond appropriately to supervisors and co-workers and the ability to deal with changes in a routine work setting. Tr. at 204-05. However, it is important to note here that Dr. Mernan never supported the opinions expressed in this questionnaire with any reference to the Center's notes or to any other medical record in this matter. Dr. Mernan merely checked off a box with no comment whatsoever. In this writer's opinion, Dr. Mernan's opinions expressed in the questionnaire are not well-supported and are inconsistent with the record as a whole.

The type of work that the VE testified the plaintiff was capable of performing - cashier, receptionist, stock clerk, or cleaning - do not suggest any more that the ability to carry out, remember, and understand simple instructions. These are activities requiring no more and Dr. Mernan opined that the plaintiff has no substantial loss of ability in these areas.

Consequently, I find that the opinions of Dr. Mernan, such as they are after what this record reflects were two visits with Dr. Mernan, Tr. at 175-78, are not well-supported and are inconsistent with other records in this matter. As such, Dr. Mernan's opinions are not entitled to controlling weight.

Second, while any reviewing court would prefer to have a perfect decision to review, that rarely is the case. A careful reading of the ALJ's opinion in this matter does indicate that the ALJ met his obligations. Even assuming that Dr. Mernan was the treating physician, the ALJ exhaustively discussed the medical notes from The Providence Center as well as all other places of treatment. He noted the inconsistencies between the medical records and the plaintiff's testimony and the histories given to the various treatment facilities. Since Dr. Mernan saw the plaintiff twice in late 2001 and the medical treatment occurred over many years (at least from 1998), it is very difficult to conclude that the two visits with Dr. Mernan deserve controlling weight. The record demonstrates clearly that the treatment involving Dr. Mernan was minimal over the course of the

14

plaintiff's care. Under these circumstances, this Court finds that the ALJ met his legal obligations in rendering his written decision.

I find that there is substantial evidence in this record to support the Commissioner's final decision. I find no basis for concluding that the ALJ failed to evaluate the entire record properly. He exhaustively outlined plaintiff's testimony. He was equally complete in summarizing the substantial medical evidence. He correctly concluded that the medical evidence did not support a finding of disability. The ALJ is not bound by plaintiff's self-serving allegations, Banc v. Secretary of Health and Human Services, 764 F.2d 44, 45 (1st Cir. 1985), and may reject them where, as here, the testimony is unsupported by the whole medical evidence and where the medical conditions would not reasonably be expected to produce the limitations alleged. 20 CFR § 404.1529; Frustaglia, 829 F.2d at 194-195; Avery, 797 F.2d at 21. The ALJ thoroughly considered the evidence of record in reaching his credibility finding, and that finding is entitled to deference. Daresay v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986). I find no error on the part of the ALJ in applying these standards.

In short, I find no error in the ALJ's analysis of this record or in her conclusion. This record fully supports his findings and conclusions. To reverse the decision of the Commissioner would require this Court to substitute its own opinion for that of the ALJ. The Court cannot do this. Lizotte, 654 F.2d at 128.

The Commissioner's motion to affirm is granted and the plaintiff's motion for summary judgment is denied.

So ordered.

ENTER:                                              By Order

_____        _____
Robert W. Lovegreen                                 Deputy Clerk
United States Magistrate Judge
June 27, 2005

15